# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Theresa Howard**, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 13-cv-00374 |
| | : | |
| v. | : | |
| | : | |
| **Philadelphia Housing Authority;** | : | |
| **Metropolitan Regional Council of** | : | |
| **Carpenters and Joiners of America, aka** | : | |
| **United Brotherhood of Carpenters &** | : | |
| **Joiners; Edward Coryell, Sr. (officially** | : | |
| **and personally); and Mark Durkalec** | : | |
| **(officially and personally)** | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW RE DEFENDANTS' MOTIONS TO DISMISS THE
SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**Baylson, J.**                                                                                                           **October 24, 2013**

## I.      Introduction

Plaintiff is a black, female carpenter who was discharged from her employment with the Philadelphia Housing Authority ("PHA") on March 24, 2011.  Plaintiff now brings an employment discrimination action against her former employer, PHA, and the United Brotherhood of Carpenters (the "Union"), her union.  Plaintiff's second amended complaint alleges five counts.  Plaintiff has brought

   (1) race and gender discrimination claims under Title VII, 42 U.S.C. § 2000e *et seq.*;

   (2) retaliation claims under Title VII, 42 U.S.C. § 2000e-3(a); and

   (3) race and gender discrimination claims under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 *et seq.*,

against her employer, PHA, and the Union, as well as Edward Coryell, the Union's Sr. Executive Secretary, and Mark Durkalec, the Union's Business Agent, in their official and individual capacities.[1] Plaintiff has also asserted

> (4) a breach of contract claim against PHA for paying her less than what her Union's contract with PHA required; and
>
> (5) a claim for breach of the duty of fair representation against the Union under 29 U.S.C. § 141 *et seq*.

Plaintiff's second amended complaint does not identify which factual allegations pertain to which counts and each count incorporates all preceding paragraphs—including the paragraphs of previous counts. Additionally, Plaintiff only generally asserts Title VII and state law violations based on gender and race discrimination. Giving Plaintiff's complaint the benefit of liberal construction, it asserts civil rights violations based on theories of retaliation, disparate treatment, and hostile work environment—the disparate treatment and hostile work environment theories are not expressly enunciated but are fairy implied from the allegations in the complaint.

PHA's Motion to Dismiss (ECF 20) contests Plaintiff's hostile work environment and disparate treatment claims, as well as her breach of contract claim. Plaintiff does not contest Plaintiff's retaliation claim, and her claim for violation of duty of fair representation is directed at the Union only.

The Union's Motion to Dismiss (ECF 25) contests Plaintiff's hostile work environment, disparate treatment, and retaliation claims, as well as her violation of duty of fair representation claim. Plaintiff's breach of contract claim is not directed at the Union.

---

[1] For the purpose of this memorandum, Edward Coryell, Mark Durkalec, and the Union will collectively be referred to as the "Union."

## II. Background

PHA hired Plaintiff in 2008 based on a referral from the Union. She alleges in her complaint that from 2008 to 2011 she experienced a variety of hardships. Plaintiff alleges that

(1) she was sexually assaulted on the job by a fellow employee in August 2009 (ECF 28 ¶ 26);[2]

(2) she was subject to sexist comments by her co-workers (ECF 28 ¶¶ 26, 32);

(3) she was assigned to projects with less safe and less sanitary work conditions than white, male workers (ECF 28 ¶¶ 26, 40-42);

(4) she was provided with inferior tools for her projects than those given to white, male workers (ECF 28 ¶ 26, 43-47);

(5) though she repeatedly complained of this treatment from 2009 through March 2011 to both PHA and the Union, they did nothing (ECF 28 ¶ 25, 29, 34-39, 50);

(6) PHA and the Union gave her unsafe and unsanitary work assignments, inadequate tools, failed to act on her complaints of harassment, and placed her on assignments with co-workers about whom she had complained of past harassment in retaliation for her bringing the August 2009 EEOC charge (ECF 28 ¶¶ 27-31);

(7) she was harassed and threatened by a co-worker on March 2011 (ECF 28 ¶¶ 48, 51);

(8) after reporting the March 2011 incident to the police, the Union and PHA used this incident as a pretext to fire her because she is black and female, as well as in retaliation for her filing an EEOC charge against the Union and making her previous complaints (ECF 28 ¶¶ 51, 54-57, 80);

(9) PHA did not follow its own procedures or policies when it decided to terminate Plaintiff's employment (ECF 28 ¶ 58);

(10) the Union failed to initiate a grievance procedure to assist Plaintiff in contesting her termination in retaliation for her prior complaints against the Union (ECF 28 ¶¶ 52-56, 81);

---

[2] Plaintiff filed a complaint with the EEOC against the Union for the August 2009 incident. The EEOC did not take action on the complaint, granted Plaintiff permission to pursue the claim herself in federal court, and Plaintiff filed a suit. That suit is not before us, but Plaintiff relies on that incident to bolster her hostile work environment claim, as it supports her allegation that she has been continuously subject to discriminatory conduct. Plaintiff also relies on the August 2009 charge as the basis for her retaliation claim. *See* 2nd Am. Compl., ECF 28 ¶¶ 25, 78.

3

(11) PHA paid Plaintiff at a rate less than the bargained for contractual union rate for the work she performed as a carpenter (ECF 28 ¶¶ 57-77); and

(12) PHA and the Union's decision to fire Plaintiff was also in retaliation for Plaintiff reporting her pay discrepancy to the Department of Labor (ECF 28 ¶¶ 70, 82).[3]

In response to these incidents, Plaintiff filed two separate charges with the EEOC. On May 9, 2011, Plaintiff filed Charge No. 530-2011-01732 against the Union. The box on the EEOC form indicates that the charge is based on retaliation only. The description of the charge, however, contains allegations of race and gender discrimination. (Exhibit C of 2nd Am Compl., ECF 31 at 2-3). On May 9, 2011, Plaintiff filed Charge No. 530-2011-01733 against PHA. The EEOC form indicates that the charge is based on retaliation only. The charge description is identical to the charge form against the Union, and thus also contains allegations of race and gender discrimination. (Exhibit C of 2nd Am Compl., ECF 31 at 5-6). Plaintiff's EEOC complaints were cross-filed with the Pennsylvania Human Relations Commission. (ECF 28 ¶¶ 3, 4).

The EEOC provided Plaintiff with a Notice of Right to Sue on October 25, 2012 for Charge No. 530-2011-01733. (Exhibit A of 2nd Am Compl., ECF 29). The EEOC provided Plaintiff with a similar notice on December 14, 2012 for Charge No. 530-2011-01732. (Exhibit A of 2nd Am Compl., ECF 29). Plaintiff initiated suit against Defendants by filing a complaint in this court on January 23, 2013. Plaintiff timely filed a suit incorporating both charges in

---

[3] Plaintiff's second amended complaint does not provide any details about (1) what kind of discriminatory comments were made towards her; (2) how the tools she was given were inadequate or inferior to those of white, male workers; or (3) how her work assignments were unsafe, unsanitary, or in any way worse than those given to white, male workers. The complaint also provides only one sentence about the sexual assault incident of August 2009. See 2nd Am. Compl, ECF 28 ¶ 26 ("These hardships include but were not limited to: (a) being sexually assaulted on the job by a fellow employee (approximately August 2009)."). Although the March 2011 incident is described in a bit more detail, the episodes of harassment and discrimination between the August 2009 incident and the March 2011 incident are described vaguely—and often appear in the form of conclusory legal statements. *E.g.*, ECF 28 ¶ 30 ("Plaintiff was subjected to harassment and mistreatment on the basis of her race [and] sex . . . .").

accordance with the 90-day filing period that was triggered upon the issuance of her Right to Sue Notices.

Plaintiff attempted to file a second amended complaint without leave of court on July 9, 2013. (ECF 19). PHA filed a Motion to Dismiss the second amended complaint for failure to state a claim on July 16, 2013. (ECF 20). In response to an order by the court (ECF 21), on August 5, 2013, the parties entered into a stipulation to permit the filing of a second amended complaint. (ECF 22). The court approved the stipulation on August 12, 2013—pursuant to the stipulation, the second amended complaint was deemed filed on August 12, 2013. (ECF 24). The Union filed a Motion to Dismiss the second amended complaint for failure to state a claim the same day. (ECF 25). Plaintiff responded to PHA's Motion to Dismiss on August 23, 2013. (ECF 32). Plaintiff's Response to the Union's Motion to Dismiss was filed on Friday, October 19, 2013.[4] (ECF 33).

## III. PHA's Grounds for Dismissing the Complaint

PHA does not contest the sufficiency of Plaintiff's retaliation claim and considers Plaintiff's violation of the duty of fair representation to be directed exclusively at the Union. Aside from those claims, PHA argues that Plaintiff's complaint is deficient in three ways.

### A. Failure to Exhaust Administrative Remedies

First, PHA contends that Plaintiff has failed to exhaust her administrative remedies as to her gender and race discrimination claims because she only checked "retaliation" on her EEOC charge form.

When the EEOC provides a complainant with a Right to Sue Notice, the ensuing private action is limited to claims that are within the scope of the initial administrative charge. *Antol v.*

---

[4] Plaintiff's Response to the Union's Motion to Dismiss, while untimely, will nevertheless be considered. The Court reminds Plaintiff's counsel that deadlines set by our local rules must be followed, or counsel must seek the Court's approval for an extension.

*Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). "[T]he scope of a resulting private action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination ." *Hicks v. ABT Assoc.,Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (internal quotation marks omitted). "[T]his standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form," *Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411, 414 (3d Cir. 2010) (unreported), while at the same time it prevents a plaintiff from "greatly expand[ing] an investigation simply by alleging new and different facts" once she brings a private action. *Hicks*, 572 F.2d at 966.

Although PHA is correct that Plaintiff only checked the "retaliation" box, the description of the discriminatory conduct in the charge contains allegations of race and gender discrimination. (ECF 31). The details enumerated in the charge description—which include allegations of harassment, unfair treatment, improper tools, and unsanitary work conditions—are sufficient to reasonably conclude that the scope of the EEOC investigation would have covered race and gender discrimination. *See Hicks*, 572 F.2d at 966. Accordingly, Plaintiff did not fail to exhaust her administrative remedies for race and gender discrimination.

### B. Statute of Limitations

PHA next contends that the scope of Plaintiff's complaint extends well beyond the 180-day statute of limitations for complaints about unlawful, discriminatory treatment. Plaintiff's complaint contains allegations relating to conduct occurring as far back as 2008. PHA argues that this conduct is beyond the scope permitted by statute and should be excluded.

As an initial matter, Plaintiff rightly responds that 180 days is the incorrect limitations period. 42 U.S.C. § 2000e-5(e)(1) states that where a complainant has instituted proceedings

with a State or local agency with authority to grant or seek relief from an unlawful employment practice, then an EEOC charge may be filed within 300 days after the alleged unlawful employment practice occurred. *See Mandell v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) ("To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice."). Plaintiff alleges that she cross-filed her EEOC complaints with the Pennsylvania Human Right Commission ("PHRC") (the agency charged with administering the PHRA). (ECF 28 ¶¶3, 4; ECF 31). Cross-filing with the PHRC is sufficient to trigger the 300-day limitation period. *See Mandel*, 706 F.3d at 165.

Under the 300-day limitation period, as to Plaintiff's disparate treatment claims under Title VII, the court can only consider—at the absolute most—discriminatory conduct that occurred after July 14, 2010, for a complaint must be filed within 300 days of the unlawful conduct and the precise dates of the conduct have not been specifically plead. Notably, Plaintiff's PHRA claims do not receive the benefit of the 300-day limitation period. *See id.* Pennsylvania law requires that a complaint must be filed under the PHRA within 180 days of the alleged discriminatory conduct. Plaintiff filed her EEOC complaints on May 9, 2011. Therefore, in the context of the PHRA disparate treatment claims, the court can only consider—at the absolute most—discriminatory conduct that occurred after November 11, 2010. 43 Pa. Stat. § 959(h). Given that the complaint alleges conduct as far back as 2008, these limitations periods narrow the claims which Plaintiff may make.[5] *See Mandel*, 706 F.3d at 165 ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." (citation and alterations in original omitted)).

---

[5] The Court's discussion of the limitations periods is not a ruling on what evidence may be introduced at trial. The Court in exercising its discretion may permit evidence at trial that relates to facts beyond the limitations periods. *See, e.g.*, Fed. R. Evid. 404(b).

7

The limitations periods, however, do not function as a bar to conduct that comprises Plaintiff's hostile work environment claim. A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice" and "cannot be said to occur on any particular day." *Mandel*, 706 F.3d at 165 (internal quotation marks omitted). "Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Id.* (internal quotation marks omitted). To allege a continuing violation, "the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.*

Plaintiff has alleged at least one act that falls within the statute of limitations—being fired for the alleged incident involving harassment and verbal threats in March 2011 and the subsequent alleged failure of PHA and the Union to follow their procedures in handling Plaintiff's termination.[6] Some of the alleged acts that occurred prior to the March 2011 incident are similar, though vary in degree (harassing language). Though other alleged acts are of a different kind entirely (allegedly discriminatory work assignments and tool issuances), the pattern of alleged discrimination—particularly the inaction of management to Plaintiff's complaints—is similar enough for Plaintiff to proceed under a continuing violation theory.

Curiously, PHA did not argue that Plaintiff did not satisfy the elements of a claim for hostile work environment, disparate treatment, or retaliation. PHA argues only that Plaintiff's

---

[6] Discovery may reveal that the March 2011 incident was a discriminatory action that was individually actionable—and thus not a candidate for being aggregated into a course of conduct that makes out a hostile work environment claim. *See Mandel*, 706 F.3d at 165 (noting that a continuing violation consists of those acts that "are not individually actionable").

race and gender discrimination claims are barred by the statute of limitations and for failure to exhaust. This limited attack does not warrant the dismissal of Plaintiff's claims.

        **C.    Failure to Sufficiently Allege a Claim for Breach of Contract**

Finally, PHA contends that Plaintiff has not asserted any facts about the existence of an employment contract between her and PHA, or how PHA breached that contract. As Plaintiff points out in her response, this argument fails based on the allegations in the complaint. Plaintiff alleges that she is a third-party beneficiary to PHA's agreements and contracts with the federal government and to PHA's contracts with the Union, which she claims were negotiated on her behalf. (ECF 28 ¶¶ 110, 125). Plaintiff alleges that PHA was obligated to pay its workers according to rates established pursuant to the Davis Bacon Act and agreed to by contract. (ECF 28 ¶¶ 111, 126). She alleges that PHA paid her less that the rates set forth in these contracts and thus breached them. (ECF 28 ¶ 118).

Under Pennsylvania law, a third-party beneficiary has standing to sue for breach of contract. *Marsteller Comm. Water Authority v. P.J. Lehman Engineers*, 605 A.2d 413, 416 (Pa. Super. 1992). A person is not a third-party beneficiary, however, unless the contract states an intent to benefit the third party. *Id.* Here, Plaintiff alleges that PHA contracted with the Building and Construction Trades Council of Philadelphia to pay PHA and its skilled contractors, such as carpenters as Plaintiff, the prevailing Davis Bacon wage for their respective job classification. (ECF 28 ¶ 125). This allegation is sufficient to allege that the contract intended to compensate PHA's skilled carpenters, which includes Plaintiff.

9

## IV. The Union's Grounds for Dismissing the Complaint

The Union does not address Plaintiff's breach of contract claim because it regards it as exclusively directed at PHA. That claim aside, the Union argues that the complaint is deficient in five ways.

### A. Failure to State a Claim for Gender and Race Discrimination

The Union contends that Plaintiff has failed to allege any facts (1) that the Union exercised any control over Plaintiff's work and tool assignments or (2) that the Union's conduct was motivated by Plaintiff's race or gender. The Union argues that Plaintiff offers only general assertions that the Union was responsible for her work and tool assignments, without asserting any specific allegation with respect to how the Union could possibly be responsible for these matters—since such working conditions, according to the Union, are within the exclusive control of her employer, PHA. Because Plaintiff has failed to present any specific allegations that would suggest the Union played a role in these decisions, the Union contends that the complaint fails to state a claim for gender and race discrimination against it.

The Union also argues that, though the complaint alleges that the Union was aware that the Plaintiff was "sexually assaulted on the job by a fellow employee" in 2009, (ECF 29 ¶ 26), was subjected to "sexist comments by her co-workers," (ECF 28 ¶ 26), and was placed on job assignments with co-workers that had sexually assaulted her in the past, (ECF ¶ 31), the complaint does not indicate how these allegations amount to the Union engaging in prohibited conduct based on Plaintiff's gender or race.

Plaintiff's allegations concerning the logistics of work and tool assignments are factual matters that will be fleshed out in discovery. On a motion to dismiss, Plaintiff's factual allegations must be treated as if they were true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

Plaintiff need not provide specific allegations into the decisionmaking dynamics between PHA and the Union to sufficiently allege that the Union had some hand in the assignment process. Plaintiff need only allege facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff has alleged that PHA's Human Resource Representative told her that her termination was decided by the Union. (ECF 28 ¶ 56). This allegation permits the inference that the Union may have had other dealings with Plaintiff's employment as well, which is sufficient to place Plaintiff's allegations about the Union's role in work and tool assignments within the realm of the plausible.

The complaint also states a claim for gender and race discrimination on an additional ground, undisputed by the Union. Plaintiff has alleged that she made complaints to the Union from 2009 to 2011 about (1) being placed on jobs with people that the Union knew had sexually assaulted her in the past, (ECF ¶ 28 31); (2) being assigned unsafe and unsanitary work conditions relative to white, male workers, (ECF 28 ¶ 38); (3) enduring harassment at work, (ECF 28 ¶¶ 34, 36); (4) being terminated by her employer based on a false pretext, (ECF 28 ¶¶ 60-61); and (5) that the Union never filed a grievance, or provided any other form of representation, in response to these incidents, (ECF 28 ¶¶ 29, 53). These allegations assert that the Union failed to respond to Plaintiff's complaints or process her grievances because of her gender and race. This is sufficient to state a claim under Title VII and the PHRA. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987) (holding that a labor organization violates Title VII when it deliberately avoids processing grievances brought by members of a statutorily-protected class because it wishes to avoid alienating an employer); *Boyer v. Johnson Matthey, Inc.*, No. 02-CV-8382, 2005 WL 25893, at *8 (E.D. Pa. Jan. 6, 2005) ("A union's deliberate failure to process a grievance can constitute a violation of Title VII, the PHRA, and § 1981.").

### B. Failure to Exhaust Administrative Remedies

The Union next claims that Plaintiff has failed to exhaust her administrative remedies as to her gender and race discrimination claims because she only checked "retaliation" on her EEOC charge form.

The description in Plaintiff's EEOC charge form against the Union is identical to the description in the charge form against PHA. Accordingly, as discussed above in part III.A, the details enumerated in the charge description—which include allegations of harassment, unfair treatment, improper tools, and unsanitary work conditions—are sufficient to reasonably conclude that the scope of the EEOC investigation would have covered race and gender discrimination. *See Hicks*, 572 F.2d at 966. Accordingly, Plaintiff did not fail to exhaust her administrative remedies for race and gender discrimination.

### C. Failure to Plead Retaliation

The Union next argues that Plaintiff's retaliation claim against the Union is insufficient because the entirety of the claim consists of legal conclusions unsupported by factual allegations. This argument is meritless. Plaintiff has alleged that she filed an EEOC complaint against the Union. (ECF 28 ¶ 30). She alleges that, after and in retaliation for her filing that complaint, the Union (1) took part in giving her inferior work and tool assignments than given to white, male workers, (ECF 28 ¶ 42, 47); (2) ignored her complaints of workplace harassment (ECF 28 ¶¶ 28, 29, 81); and (3) failed to represent her when she was terminated by PHA, (ECF 28 ¶ 81). This is sufficient to state a claim for retaliation.

### D. Failure to State a Claim for a Violation of the Duty of Fair Representation

The Union also contends that Plaintiff fails to allege a violation of the duty of fair representation because she does not allege any arbitrary, discriminatory, or bad-faith conduct on

the part of the Union. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967) (holding that a breach of the duty of fair representation occurs when a union's conduct toward a member is "arbitrary, discriminatory, or in bad faith"). To fulfill the duty of fair representation, a union's representation "must be vigorous enough so that available opportunities to present [a] grievance are utilized, and sufficiently thorough so that the basic issues are presented in an understandable fashion." *Findley v. Jones Motor Freight*, 639 F.2d 953, 959 (3d Cir. 1981). A union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca*, 386 U.S. at 191 (1967).

Here, Plaintiff has alleged that she has made numerous complaints about workplace harassment and unfair treatment to her Union, including a complaint of pretextual termination, about which, Plaintiff claims, the Union did nothing. (ECF 28 ¶ 28, 53). Plaintiff also alleges that the Union did not take any action out of discriminatory and retaliatory animus. (ECF 28 ¶¶ 81, 82). Taking the allegations in Plaintiff's complaint as true, the Union's failure to take action on any of these complaints raises an inference that its inaction was discriminatory or done in bad faith. *See Vaca*, 386 U.S. at 191. The complaint therefore states a claim for a violation of the duty of fair representation.

### E. Coryell and Durkalec Cannot Be Sued as Individuals Under Title VII

Finally, the Union argues that Coryell and Durkalec are not amenable to suit in their individual capacities under Title VII. *See Sheridan v. E.I. DuPont*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII"). In her Response to the Union's Motion to Dismiss, Plaintiff concedes that Coryell and Durkalec cannot be held individually liable as to Plaintiff's Title VII claims.

13

## V. Conclusion

PHA's breach of contract and exhaustion contentions are meritless. Though PHA rightly points out that the limitations periods may present evidentiary issues going forward, none of Plaintiff's claims should be dismissed on statute of limitations grounds. Accordingly, PHA's Motion is denied.

The arguments in the Union's Motion are equally unavailing, with the exception of Coryell and Durkalec's ability to be sued individually under Title VII. Accordingly, the Title VII claims against Coryell and Durkalec, in their individual capacities, will be dismissed. The remainder of the Union's Motion is denied.

O:\CIVIL 13\13-374 howard v. PHA\13cv374 Howard PHA & Union Mot to Dismiss Memorandum of Law 10.21.13.docx