IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED
JUN 1 8 2018
KATE BARKMAN, Clerk
By _____ Dep. Clerk

| | | |
|---|---|---|
| RYAN M. PADDICK<br>Movant<br>v.<br>SHENECQUA BUTT; THERESA HOWARD; and<br>ELLEN BRONSON, a/k/a ELLEN BROWN<br>Respondents | : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION<br><br>NO.: 09-4285 |
| RYAN M. PADDICK<br>Movant<br>v.<br>THERESA HOWARD<br>Respondent | : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION<br><br>NO.: 13-374 |

## MEMORANDUM AND OPINION

DAVID R. STRAWBRIDGE   June 18, 2018
UNITED STATES MAGISTRATE JUDGE

Before the Court is Sandra Thompson Esq.'s ("Thompson") Motion to Stay execution of our order of May 24, 2018 pending appeal and Motion to approve a supersedeas bond of $116,000. (Doc. 370.)[1] Ryan Paddick, Esq. ("Paddick"), movant and former counsel, Shenecqua Butt ("Butt), and Ellen Brown ("Brown") (formerly Bronson) have responded to this motion, but Theresa Howard ("Howard") has not. (Docs. 371, 374 & 378.) Thompson has filed a reply. (Doc. 375.)

Thompson's appeal deals with two of our orders, each of which were accompanied by a memorandum opinion. She first appeals our April 27, 2018 order regarding Paddick's charging lien, where we determined that he had established an entitlement to a fee in the amount of $54,562.73. (Docs. 357.) She also appeals our May 24, 2018 order where we directed that

---

[1] We cite to the 09-4285 docket designated for the consolidated cases unless otherwise noted.

1

Paddick's award be paid from Thompson's fee, rather than from Butt, Howard, and Brown (collectively "the clients"). (Docs. 369.) She now asks the Court to impose a stay of this order. Should we grant the stay, she asks that we approve a supersedeas bond of $116,000, which would be sufficient to cover Paddick's award with interest whether taken from her fee or from her client's share of the settlement fund.

In resolving this question, we turn to Judge Ambro's opinion in *In re Revel AC, Inc.*, where he sets out the Supreme Court's four factor test which instructs that we must consider:

> (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest.

*In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (citing *Republic of Phil. v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d. Cir. 1991); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

In *Revel*, the Court stated that "the first two factors are the most critical, [and that] if 'the chance of success on the merits [is only] better than negligible' and the 'possibility of irreparable injury' is low, a stay movant's request fails." 802 F.3d at 570 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). As we strongly believe that Thompson cannot make out more than a "significantly better than negligible" likelihood of success on the merits, we are bound by this case law to deny her stay.

### I. Likelihood of success on the merits

Thompson has failed to convince us that she has made a strong showing of a likelihood of success on the merits. To satisfy the first factor, she must show that that her chance of winning on the merits is "significantly better than uegligible but not greater than 50%." *Revel*, 802 F.3d

2

at 568, 571. Judge Ambro explained that this standard is met "if there is a reasonable chance, or probability of winning" and states that "while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Id.* at 568-69 (internal citations omitted.) Thompson contends that she has a strong likelihood of success on appeal for several reasons. We do not agree.

Thompson first argues that our "finding that only the subsequent counsel is liable to any former counsel's charging lien is contrary to established Pennsylvania law." (Doc. 375 at 4.) We never said any such thing. Rather, as set out in our April 27, 2018 opinion, we noted that Paddick's claim was articulated as one "on the settlement proceeds obtained by respondents." (Doc. 306.) We were guided by the seminal case of *Recht v. Urban Redevelopment Auth.*, which established the right of an attorney to assert a charging lien on the fund created as a result of a judgment, or here, a settlement. 168 A.2d 134 (Pa. 1961).

Thompson also contends that the recent Pennsylvania Supreme Court case *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093 (Pa. 2018) created a new rule in March 6, 2018 (after Paddick's lien was filed) that a former attorney *may* pursue a lien directly against a subsequent attorney. This is not how we construe Paddick's claim, but even if it is so construed, we supported our determination with factual findings that the work done by Paddick clearly brought benefit to Thompson. As *Meyer, Darragh* teaches, "where the facts demonstrated unjust enrichment" as here, "predecessor counsel may recover damages in quantum meruit against successor counsel in a contingency fee dispute." 179 A.3d at 1104-05. Thompson's argument is not in fact supported by *Meyer, Darragh*.

3

Following the assertion of Paddick's "Motion for Recognition and Enforcement of the Lien" in November 2017 (Doc. 306), Thompson and her clients entered into an agreement that they would not contest her taking the full 35% of her contingency fee agreement and in exchange she would continue to represent them in opposing Paddick's claim without further charge. She asserted that she did not have a continuing responsibility to represent her clients as they defended the fund against Paddick's lien and that she could have withdrawn from the case leaving them without counsel. (Doc. 375 at 4-5.)

As we articulated in our May 24, 2018 opinion, Thompson would have had to request our permission to withdraw her representation pursuant to Local R. Civ. P. 5.1, which provides that "[a]n attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this court shall at the same time enter an appearance for the same party." We would likely not have permitted her to withdraw. (Doc. 368 at 6.) While this specific issue was not squarely before us, we found that Thompson was on notice of Paddick's asserted lien at the time she entered her appearance in May 2015, and that she did or should have appreciated that Paddick would assert that he "wanted to preserve the time [he] had invested in the case," which he did within her first week on the case. (Doc. 368 at 4-5; Doc. 339 at 10.) As such, we conclude that she took the risk of Paddick successfully asserting the lien when she accepted the representation. We also note that the contingency fee agreement she entered referred to her representation "up to and including Eastern District of Pennsylvania," which would encompass the lien dispute. (Lien hearing Ex. R-13.) We are unwilling to accept Thompson's proposition

4

that she should have been able to collect her full fee and withdraw when liens are asserted, leaving her clients unrepresented.[2]

Thompson also makes a number of vague assertions regarding our factual findings and discussion of equitable considerations, even stating that the appellate court is "likely to weigh the evidence differently." (Doc. 375 at 5.) She gives no specific references to the particular factual findings or conclusions she contests. We conducted four days of hearings, three on the lien dispute and one on the issue of where Paddick's award would come from. We obtained testimony from all interested parties, and wrote two lengthy memorandum opinions addressing the issues raised in those proceedings. Of note, we found that Thompson did not properly consider the issue of whether her interests conflicted with the interests of her clients. As the case was decided on equitable principles, we are given "considerable discretion," and understanding that our factual findings will be reviewed for clear error. FED. R. C. P. 52(a)(6); *Devon IT, Inc. v. IBM Corp.*, No. CIV.A. 10-2899, 2013 WL 6721748, at *8 (E.D. Pa. Dec. 20, 2013). For all of these reasons, we cannot accept that Thompson has made a "significantly better than negligible" showing of success on the merits of her appeal, and we must deny the stay.

## II. Irreparable harm

---

[2] The Florida Supreme Court articulated this rationale well in a recent decision discussing a proposed amendment to their ethical rules. *In Re Amend. Rule Reg. Fl. Bar 4-1.5—Fees and Costs for Legal Serv.*, 202 So. 3d 37, 39 (Fla. 2016) (observing that lawyers who have contingency fee agreements with their clients "should, as part of the representation, also represent those clients in resolving medical liens and subrogation claims related to the underlying case. This should be done at no additional charge to the client beyond the maximum contingency fee." They also discussed the competing considerations by stating that **"[a]lthough it may be true that, given the increased complexity of modern litigation, there will be some cases where the amount of work required to resolve a lien is more than initially anticipated.... [t]hat risk and reward is built into the contingency fee contract."**) (emphasis added.)

5

Although Thompson has demonstrated that she may have difficulty in recouping money from the clients should she be successful on appeal, we are not convinced that she has demonstrated irreparable harm. To make out this factor, Thompson must demonstrate that the harm to her is "more apt to occur than not." *Revel*, 802 F.3d at 569. This she has failed to do. Thompson has provided no information to support her statement that the clients would "likely spend the money." (Doc. 375 at 6.)[3] Similarly, she points to evidence that Paddick was having financial problems in 2015, but has provided no current information regarding his financial situation.

We know that each former client as already received some portion of the fund in January 2018 (Doc. 362 at 11-12) and would receive an additional distribution even if we decided to grant the stay, but we have no information that the clients would spend the entire $58,000 sum at issue. Even accepting that there is some risk that Thompson would suffer from difficulty in recouping money from her clients given that we will not grant the stay, it is appropriate that this risk be assigned to Thompson in light of our strong belief of the weakness of her legal position.

## III. Conclusion

As we found that Thompson has not demonstrated a likelihood of success on the merits, it is not necessary for us to discuss the final two factors. *Revel*, 802 F.3d at 571 ("[I]f the movant does not make out the requisite showings on either of these first two factors, the... inquiry into the balance of harms and the public interest is unnecessary and the stay should be denied without further analysis.") (quoting *In re Forty-Eight Insulations*, 115 F.3d 1294, 1300-01 (7th Cir.

---

[3] The only information regarding potential substantial harm that we have is a June 8, 2018 email Brown sent to Thompson that we have construed as a pro se response to Thompson's motion. (Doc. 378.) She states "I want to be clear I don't agree with the stay motion plus I also want it to be known that I am behind on bills and I need my funds released as soon as possible."

1997). Nonetheless, we note that the balancing of harms supports denying the stay,[4] and that the public interest is unharmed, as this case does not have "consequences beyond the immediate parties." *Revel*, 802 F.3d at 569 (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 388 (7th Cir. 1984) (Posner, J.)).

The factors against granting a stay, especially Thompson's poor likelihood of a successful appeal, outweigh any competing considerations. Accordingly, this Court will deny Thompson's motion and order her to promptly disburse funds in accordance with our May 24, 2018 order.

An appropriate order follows.

---

[4] This finding is based upon our belief that given the extensive history of this dispute, the potential hardship of recouping expenses would be most appropriately placed on Thompson, and that the plaintiffs should not be made to bear the burden of a delayed disbursement of funds.

7