IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN M. PADDICK, | : | CIVIL ACTION |
|     Movant | : | |
| v. | : | NO.: 09-4285 |
| | : | |
| SHENECQUA BUTT; THERESA HOWARD; and | : | |
| ELLEN BRONSON, a/k/a ELLEN BROWN; | : | |
|     Respondents. | : | |

| | | |
|---|---|---|
| RYAN M. PADDICK, | : | CIVIL ACTION |
|     Movant | : | |
| v. | : | NO.: 13-374 |
| | : | |
| THERESA HOWARD, | : | |
|     Respondent. | : | |

October 9, 2018

## MEMORANDUM OPINION

Presently before the Court is a discharged attorney's Praecipe for Judgment upon Garnishee ("Praecipe"), where he seeks payment of an award held in a trust account at the successor attorney's bank, Fulton Bank ("Fulton"). (Doc. 421.)[1] The discharged attorney, Ryan M. Paddick, Esq. ("Paddick"), seeks payment of the award together with interest, costs and attorney's fees. The discharged attorney, Sandra Thompson Esq. ("Thompson"), objects.

This case has an extensive and difficult history which culminated in an April 27, 2018 Memorandum Opinion and Order where we determined that Paddick was entitled to a portion of the settlement fund (hereinafter "Award") of his and Thompson's former clients in the amount of $54,562.73. (Doc. 357.) On May 24, 2018, we ordered Thompson to disburse to Paddick his Award from the settlement fund by June 1, 2018. (Doc. 369.) Thompson filed a motion for stay,

---

[1] As we are writing principally for the parties who are familiar with the particulars in the case, we cite to the 09-4285 docket designated for the consolidated cases. We discuss only those matters necessary to resolve the issues before us.

1

which we denied in a June 18, 2018 Memorandum Opinion and Order. (Docs. 380, 381.) As Thompson has still failed to disburse or direct disbursement of his award, Paddick has filed this Praecipe seeking an order of judgment against Fulton as garnishee and holder of Thompson's funds. (Doc. 421.)

Following upon a recorded telephone conference on September 11, 2018, in which Thompson, Paddick, and Mr. Justin Tomevi, counsel for Fulton, participated, and where Tomevi confirmed that sufficient funds were still in the trust account, we directed Paddick to identify the interest, costs, and/or attorney's fees due to him with regard to his execution efforts. (Doc. 422.) He filed a response on September 14, 2018 asserting that as of that time he was entitled $241.01 in costs, $3,250.00 in attorney's fees, and $8.97 in daily interest. (Doc. 426.) Thompson filed objections on September 19, 2018. (Doc. 427.) Among Thompson's objections is her contention that there is no provision in the law providing for counsel fee in this situation. (Doc. 427 at 7-14.) She also objects to the amount of interest and costs he identifies.

We overrule her objections. For reasons set forth below, we hereby order the Clerk of Court to enter judgment against Fulton for the amount of $57,960.28, which includes the judgment amount of $54,562.73, $3,250.00 in attorney fees, and $147.55 in costs. We also note that Paddick is entitled to $3.45 in daily interest from May 24, 2018 until the date of payment.

I. **DISCUSSION**

Thompson attacks the propriety and amount of the $3,250.00 in attorney's fees Paddick seeks. She argues principally that there is no legal basis under Pennsylvania law to award Paddick fees, that he is not entitled to fees as a *pro se* litigant, and that his fees, and the fees of counsel with whom he consulted, were not reasonable or necessary. (Doc. 427 at 7-14.) She also objects to Paddick's calculation of costs and interest. We discuss each argument in turn,

2

ultimately concluding that Paddick is entitled fees, costs, and interest as a result, in part, of Thompson's dilatory and obdurate conduct in refusing to make payment.

### A. Jurisdiction and Applicable Law

We begin by noting that we exercise ancillary jurisdiction over this claim under 28 U.S.C. § 1367 as discussed in our April 27, 2018 Memorandum Opinion. (Doc. 356, 3-4.) "Without our exercising ancillary jurisdiction over th[is] claim[], the principal case could not be disposed of efficiently; nor could we do complete justice without deciding this dispute." (*Id.*) (citing *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3d Cir. 1987). Before us now is Paddick's praecipe to obtain a judgment against Fulton as garnishee of Thompson's funds.

Federal Rule of Civil Procedure Rule 69(a) governs the procedure that applies to the enforcement of a money judgment in federal court.[2] It provides, in pertinent part:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of a judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1).

Rule 69(a) applies in that Paddick's praecipe is a "proceeding[] . . . in aid of . . . execution." *See United States v. Miller*, 229 F.2d 839 (3d. Cir. 1956) (applying Rule 69(a) to a garnishment proceeding) (citation omitted). By its own terms, Rule 69(a) requires a district court to apply state law unless there is a federal statute that applies. In that no federal statute applies

---

[2] Thompson contends that Paddick's claim for attorney fees must be denied as untimely in that he failed to file it within 14 days. She cites "FRCP 34(d)" in support of this contention. (Doc. 427 at 11-12.) Rule 34 relates to discovery practice, but we assume she intended to cite Rule 54(d), which governs fee motions in federal court. The matter before us, however, is not a fee motion; it is a praecipe to enforce a money judgment. Accordingly, we are persuaded that Rule 69(a) applies.

here, Pennsylvania procedural law applies. Pennsylvania substantive law applies insofar as the underlying dispute regarding attorney's fees is a "matter[] primarily of state contract law." *Novinger*, 809 F.2d at 217.

The Pennsylvania Rules of Civil Procedure specify the relevant procedures for execution on a civil judgment. As relevant here, "[t]he Pennsylvania rules provide that after a writ of execution is issued, the judgment holder may serve interrogatories on the garnishee respecting property possessed by him but owned by the judgment debtor." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 655 (3d Cir. 1982) (citing Pa. R. Civ. P. 3144). "Service of these interrogatories is the equivalent of serving a complaint, and the garnishee must then file a timely response or suffer default." *In re Szymanski*, 413 B.R. 232, 244 (Bankr. E.D. Pa. 2009). A response to the interrogatories is timely if filed within twenty days of service of the interrogatories. Pa. R. Civ. P. 3144. "Admissions of a garnishee in answers to a judgment creditor's interrogatories will support the entry of a judgment thereon 'only in a clear case, where there is a distinct admission of liability by the garnishee….' " *Boback v. Ross*, 114 A.3d 1042, 1044 (Pa. Super. 2015) (internal citation omitted). Here, Paddick served Fulton interrogatories on July 27, 2018, to which it responded on August 30, 2018. (Doc. 421-1.) In its response, Fulton admitted that it possessed Thompson's IOLTA account.[3] (*Id.*)

---

[3] The pertinent question and the answer provided by Garnishee to Paddick's interrogatories states:

"D. Does Sandra Thompson, Esquire maintain an IOLTA escrow account with Fulton Financial Corporation or its Affiliate Banks, including Fulton?

ANSWER: Yes." (Doc. 421-1.)

4

We turn now to Pennsylvania Rule of Civil Procedure 3146, which governs garnishment proceedings. It provides, in pertinent part, that upon admission by the garnishee in response to interrogatories by the plaintiff:

> The prothonotary, on praecipe of the plaintiff, shall enter judgment against the garnishee for property of the defendant admitted in the answer to be in the garnishee's possession . . .

Pa. Rule Civ. P. 3146(b)(1).

In that Thompson's funds were "admitted in the answer to be in the garnishee's possession," Rule 3146(b) directs that judgment "shall [be] enter[ed]." What remains to be determined, however, is whether and to what extent Paddick is entitled attorney's fees, costs, and interest with regard to his execution efforts.

### B. Attorney's Fees

Rule 3146 centers on the dealings between the plaintiff (Paddick) and the garnishee (Fulton). It authorizes attorney's fees against the garnishee if it "fails to appear, or if appearing offers no evidence." Pa. R.C.P. 3146(a). In the case here, where a garnishee admits in its response to plaintiff's interrogatories that it possesses the defendant's (respondent's) property, Rule 3146(b) provides that "no money judgment entered against the garnishee shall exceed the amount of the judgment of the plaintiff against the defendant together with interest and costs."[4] Pa. R.C.P. 3146. The rule is silent as to the propriety of attorney's fees against a defendant. It is also silent, however, as to the propriety of attorney's fees against a plaintiff, but in *American Mutual. Liability Ins. Co. v. Zion & Klein, P.A.*, the Superior Court affirmed an attorney's fees award to a garnishee *against the plaintiff* where plaintiff's actions in seeking a default judgment

---

[4] We note that the term "costs" under Pennsylvania law does not generally include attorney fees. *Merlino v. Delaware County*, 556 Pa. 422, 426, 728 A.2d 949, 951 n. 2 (1999); *Corace v. Balint*, 418 Pa. 262, 271, 210 A.2d 882, 887 (1965).

5

were arbitrary, obdurate, and vexatious under section 2503(7). 339 Pa. Super 475, 489A.2d 259 (Pa. Super. 1985). The Court's rationale was that "[a]n award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent." *Id.* at 480. That interpretation comports with the Pennsylvania Supreme Court's explanatory comment to Rule 3146, which couches the authority to levy attorney's fees against a garnishee in Section 2503 of the Judicial Code's prohibition against "dilatory, obdurate or vexatious conduct during the pendency of [a] matter." *See id.*, explanatory comment to 1981 amendment. In that a garnishee may be ordered to pay plaintiff's attorney fees for its dilatory, obdurate or vexatious conduct, it most certainly follows that a respondent who has engaged in dilatory, obdurate or vexatious conduct may be forced to pay the same.

Attorney fees are governed by the provisions set forth in 42 Pa.C.S. § 2503. In general, Pennsylvania follows the "American rule" precluding the award of attorney's fees in the absence of statutory or contractual obligation. *Fidelity-Philadelphia Trust Co. v. Philadelphia Trans. Co.*, 404 Pa. 541, 548 173 A.2d 109, 113 (1961). Thompson contends that under Pennsylvania law, Paddick is not entitled attorney's fees in that he fails to satisfy one of the limited exceptions in 42 Pa. C.S. § 2503 whereby a litigant may recover attorney's fees. (Doc. 427 at 10-11.) Paddick responds that Thompson's conduct satisfies the statutory exception under section 2503(7), which permits recovery of attorney's fees to "[a]ny participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. § 2503(7).

Thompson refused to disburse funds pursuant to this Court's Order, and as set out in our May 24, 2018 opinion her conduct "demonstrates . . . a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." In re Estate of Burger, 852 A.2d 385 (Pa. Super. 2004), *aff'd* 898 A.2d 547, 587 Pa. 164 (defining "dilatory" conduct under

section 2503). Her recalcitrance persisted despite this Court's June 18, 2018 Order again compelling payment. *See id.* (defining conduct as "obdurate" when counsel is "stubbornly persistent in wrongdoing") (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 815 (1987)). It is undisputed that Thompson has not yet disbursed funds to Paddick in violation of this Court's May 24, 2018 Order.[5] (*See* Doc. 424) (Thompson "[a]dmitt[ing] [that as of September 14, 2018] funds have not yet been disbursed to Paddick.") Thompson contends that she "had proper motive to vindicate her rights in filing requests for reconsideration and by filing a direct appeal." (Doc. 427 at 4.) We agree, but her argument is unavailing in that we denied her motion to stay on June 18, 2018 and made clear in our July 3, 2018 Order that the judgment remained valid despite Thompson's motion to stay in the Court of Appeals. (*See* Doc. 394.) Moreover, in our July 3 Order we compelled her to make payment by July 10, 2018. (*Id.*) 98 days have passed, yet Thompson still has not made payment or directed her bank to make payment. We conclude that §2503(7) provides a basis to award Paddick fees in that Thompson's dilatory and obdurate conduct caused additional legal work that could have, and should have, been avoided by complying with this Court's Orders.

   **1. Attorney's Fees for Pro Se Litigants**

The general rule under federal law is that *pro se* litigants, even those who are lawyers, cannot recover attorney's fees under federal fee-shifting statutes. *Kay v. Ehrler*, 499 U.S. 432 (1991) (holding that a *pro se* litigant who is also an attorney may not be awarded attorney's fees under the Civil Rights Attorney's Fees Awards Act). In that no fee-shifting statute applies here, and in the absence of Pennsylvania Supreme Court precedent on point, Thompson directs us to a decision of the Pennsylvania Commonwealth Court in *Westmoreland Cty. Indus. Dev. Auth. v.*

---

[5] We note that a hearing to establish "dilatory, obdurate or vexatious conduct" is unnecessary when the conduct is "developed through undisputed facts." *Kulp v. Hrivnak*, 765 A.2d 796, 800 (Pa. Super. 2000).

7

*Allegheny Cty Bd. Of Prop Assess., App. & Rev.*, in which the court reversed an award of the "*pro se* equivalent" of attorney's fees to a non-lawyer prevailing party, concluding that the "statute [did] not provide authority" for the award. 723 A.2d 1084, 1087 (Pa. Commw. 1999).[6] We have also considered *Kanofsky v. Tax Review Board*, No. 2740 C.D. 2015, 2017 WL 56122 (Pa. Commw. 2017) and *Maurice A. Nernberg & Assoc. v. Coyne*, 920 A.2d 967 (Pa. Commw. 2007), which both cited *Westmoreland Cty.* and reached the same conclusion under similar facts. These cases, however, are distinguishable. In each, a *pro se* non-lawyer litigant sought to recover fees for the underlying litigation as to the merits of his case. Here, in contrast, an attorney-litigant seeks to recover fees for time spent attempting to collect on a judgment separate and apart from the underlying merits of the case.

We turn to the United States Supreme Court's decision in *Kay* for guidance. In holding that a *pro se* litigant could not recover attorney's fees in a civil rights action, the Court concluded that "[t]he statutory policy of furthering the successful prosecution of meritorious [civil rights] claims is better served by a rule that creates an incentive to retain counsel in every such case." *Kay*, 499 U.S. at 438. We agree with that rationale. We are convinced, however, that it must not apply to an attorney-litigant's execution efforts following upon a fee dispute – a situation worlds apart from, and less fraught with consequence in comparison to, an attorney-litigant's prosecution efforts in a civil rights claim.

We are also convinced that equitable considerations warrant intervention. As noted in Moore's Federal Practice:

---

[6] Thompson also argues that the rationale of *Kooritzky v. Herman*, 178 F.3d 1315 (D.C. Cir. 1999) should apply. (Doc. 7-8.) There, following *Kay*, the court held that a *pro se* attorney-litigant could not recover attorney's fees under a fee-shifting provision in the Equal Access to Justice Act. *Id.* at 1317. For reasons as set forth below, we decline to follow the D.C. Circuit's rationale in *Kooriztky* as we decline the follow the United States Supreme Court's rationale in *Kay*.

8

> The principles set forth in *Kay* apply only in statutory fee cases. Pro se litigants, whether lawyers or not, generally may collect fees under any of the equitable exceptions to the American Rule. This is logical, for the exceptions permit fees where appropriate as a matter of equity, and equitable considerations may be present regardless of whether the fee movant was represented by counsel or not.

J. Moore, Moore's Federal Practice, ¶ 54.173[1][a], p. 54-425 (3d ed. 2011) (citation omitted).

It is undeniable that Paddick incurred a loss—the value of the time involved in execution—that was caused by Thompson's wrongful conduct. And although we agree that the law should provide an incentive for litigants to employ counsel, we cannot fault Paddick for his decision to proceed *pro se* considering the tortuous history of this case, which is riddled with attorney time that could have and should have been avoided with due diligence. Paddick informed Thompson that she would be responsible for fees if she continued to refuse payment, (*see, e.g.,* Doc. 426, Ex. M-2), and we find it fundamentally fair for Thompson to pay for the value of the services necessitated by her conduct.

### 2. Reasonableness of Attorney Time and Fees

Finally, Thompson contends that Paddick has failed to meet his burden demonstrating that the attorney time he spent, and the time spent by counsel with whom he consulted, was reasonable and necessary.[7] (Doc. 427 at 12-13.)

Pennsylvania Rule of Civil Procedure 1717 provides the relevant considerations that a court must consider in assessing an award of counsel fees:

(1) the time and effort reasonably expended by the attorney in the litigation;
(2) the quality of the services rendered;
(3) the results achieved and benefits conferred upon the class or upon the public;
(4) the magnitude, complexity and uniqueness of the litigation; and

---

[7] She also argues that the fees attributable to Michael Reed, Esq. ("Reed") must be denied in that he did not enter his appearance in the case and that his actions "[do] not arise [sic] to the level of attorney-client relationship to yield an award of attorney fees." (Doc. 427 at 9.) We are convinced, however, that Paddick's fee invoice from Reed is sufficient to establish the existence of a genuine attorney-client relationship. (*See* Doc. 429-3.)

9

(5) whether the receipt of a fee was contingent on success.

Pa. R.C.P. 1717.

Further, "under the lodestar method, '[t]he party seeking attorney's fees has the burden to prove that its request . . . is reasonable." *Clemens v. New York Central Mut. Fire Ins. Co.*, No. 17-3150, 2018 LEXIS 25803, at *7 (3d Cir. Sept. 12, 2018) (citation omitted). "In calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (citation omitted). Further, time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cty. Ct. of Com. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996).

Thompson asserts that "Paddick engaged in duplicative, unnecessary, and unreasonable strategy creating multiple filings, increased attorney fees, and costs." (Doc. 427 at 13.) Paddick responds that "[b]ecause of Ms. Thompson's refusal to disburse the award in accordance with the Court's orders, [Paddick] and his counsel, Michael Reed, Esquire were forced to engage in execution efforts." (Doc. 429 at 6.) Moreover, Paddick states that "despite the time spent totaling $5,022.50 for [himself] and $1,401.00 in fees owed to Michael Reed, Esquire, [he] seeks to recover only $3,250.00 as the reasonable and necessary fees associated with execution efforts." (Doc. 426 at 3.)

We have reviewed the 25.76 hours[8] Paddick spent on execution between June 26, 2018 and July 27, 2018, (Doc. 426 at 4), and have considered the relevant factors set forth in Pa. R.C.P. 1717. To begin, Paddick acknowledges that the 5 hours he spent traveling to the Clerk's

---

[8] Paddick avers that he spent 25.09 hours related to execution, but our calculation of his time entries show that he spent 25.76 hours. (*See* Doc. 426 at 3-4.)

10

and Marshal's office is not compensable as attorney time. (*See* Doc. 426 at 3.) We decline to credit his June 29 and July 2 entries in that the work related only to his motion for contempt, which is separate from the matter currently before us.[9] We find that the remaining 14.71 hours was reasonable in that execution procedure is unique and necessary in that execution was a prerequisite to payment in light of Thompson's refusal to voluntarily disburse funds.[10] Finally, we note that only 0.4 hours of that time is attributable to Reed and billable at his higher rate. (*See* Doc. 426 at 3-4.) Thus, the record supports an award of $3,697.50 for attorney's fees.[11] In that this amount exceeds what Paddick has requested, we direct the Clerk to enter $3,250.00 in attorney's fees.

### C. Interest

Post-judgment interest in federal court is governed by 28 U.S.C. § 1961.[12] *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 528 (3d Cir. 1988). Post-judgment interest runs from the date of the entry of judgment.[13] *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494

---

[9] For this matter, we consider only the attorney time related to Paddick's execution efforts.

[10] 25.76 hours less 5.0 (travel time) less 1.3 (June 28 contempt motion) less 4.42 (June 29 contempt motion) less 0.33 (June 29 contempt motion) equals 14.71 hours.

[11] 14.31 hours at $250.00 per hour (Paddick's rate) plus 0.4 hours at $300.00 per hour (Reed's rate) equals $3,697.50.

[12] Paddick contends that Pennsylvania law governs the calculation of interest. We disagree. The Supreme Court has held that in cases filed in federal court, Congress intended that the calculation of post-judgment interest be under federal law. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 110 S. Ct. 1570 (1990).

[13] Thompson contends that interest should be computed beginning on June 8, 2018 (the date we denied her motion to stay) and ending on July 10, 2018 (the date by which Thompson was ordered to pay her former clients). Section 1961, however, clearly states that "interest shall be calculated from the date of the entry of the judgment" and "shall be computed daily to the date of payment…." 28 U.S.C. § 1961(a), (b).

U.S. 827, 835 110 S. Ct. 1570 (1990). Thus, interest is to be computed daily until the judgment is paid in full. *See Savitsky v. Mazella*, 318 F. Appx. 131, 133 (3d Cir. 2009).

We entered an Order awarding Paddick $54,562.73 on May 24, 2018. (Doc. 369.) Interest on this judgment runs from that date. Further, Section 1961(a) provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. The rate from the Board of Governors for the calendar week preceding May 24, 2018 was 2.31%.[14] Paddick is thus entitled interest at this rate, which results in $3.45 per day from May 24, 2018 until the date of payment.[15]

### D. Costs

Paddick seeks $287.36 in costs associated with execution, encompassing $65.00 for attempted service on Thompson,[16] $74.81 for attempted service on "Fulton, NJ,"[17] $146.35 for

---

[14] Board of Governors of the Federal Reserve System (US), 1-Year Treasury Constant Maturity Rate [WGS1YR], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/WGS1YR, October 1, 2018.

[15] Multiplying the 2.31% rate by the $54,562.73 judgment results in a figure of $1260.40 interest per year. Pursuant to 28 U.S.C. § 1961(b), dividing $1260.40 by 365 days, rounded to the nearest hundredth results in a figure of $3.45 interest per day.

[16] Paddick attempted to serve the writ of execution on Thompson at a Philadelphia office listed in her email signature. Service was ineffective in that Thompson does not keep an office there, and has not kept an office there for over a year. (*See* Doc. 249-1 at 40.)

[17] Paddick first attempted service on "Fulton, NJ," instead of "Fulton." (*See* Doc. 426 at 2.) "Fulton, NJ" is an entity of Fulton Financial Corporation, but not the one where Thompson holds her IOLTA account. Thus, service was ineffective.

service on "Fulton, PA," and a $1.20 money order fee. (Doc. 429 at 5.) Thompson asserts that he should be granted costs only for his effective service on Fulton.[18] (Doc. 427 at 6-7.)

We agree with Thompson that she is not obliged to pay for Paddick's ineffective service on "Fulton, NJ" in that it resulted from Paddick's own error. We also decline to credit Paddick's attempted service on Thompson at her former Philadelphia office in that the subject matter of costs in this context is limited to those incurred in relation to this garnishment proceeding. Accordingly, we find that Thompson must pay for Paddick's effective service on Fulton and the nominal money order fee. We direct the Clerk to enter $147.55 in costs.

## II. CONCLUSION

For the reasons set forth above, we hereby order the Clerk of Court to enter judgment against Fulton for the amount of $57,960.28, which includes the judgment amount of $54,562.73, $3,250.00 in attorney fees, and $147.55 in costs. We also note that Paddick is entitled to $3.45 in daily interest from May 24, 2018 until the date of payment.

An appropriate order follows.

/s/ David R. Strawbridge, USMJ  
DAVID R. STRAWBRIDGE  
UNITED STATES MAGISTRATE JUDGE

---

[18] As of her September 19, 2018 filing, it appears that Thompson thought the effective service on Fulton cost only $74.01. (*See* Doc. 427 at 6-7.) Paddick's September 26, 2018 filing, however, shows that service cost $146.35. (Doc. 429-2 at 7.)